## ABNER C. JACKSON *vs.* FARMERS' MUTUAL FIRE INSURANCE COMPANY.

A policy of insurance, which provides that " when the assured shall increase the risk of the insurance, the policy shall become void," is avoided by the increase of risk by the assured, and does not render invalid a subsequent policy of insurance upon the same property, which provides that the existence of other insurance shall avoid the policy.

Evidence of the former existence of a policy of insurance, subject to a lien of the insu rance company, and that neither that policy nor the deposit note therefor had ever been surrendered or cancelled, and that a small assessment was laid on that and other policies, but was never collected, because the policy was declared void and the assessment remit ted by the directors by reason of an increase of risk, does not as matter of law show such an incumbrance on the property insured, as will avoid a policy obtained from another company after the increase of risk but before the policy was so declared void; although the second policy provide that the failure to disclose incumbrances shall avoid it, and neither the former policy, nor the lien thereby created, be disclosed.

On a policy of insurance for $1200, " in case of loss, payable to J. S., mortgagee, to amount of $400," the assured, if the mortgagee assent, may sue in his own name, even for a loss of less than $400; and if such assent was given before the commencement of the action, may recover costs.

ACTION OF CONTRACT to recover for the loss by fire, on the 15th of March 1853, of the plaintiff's barn, upon a policy dated July 9th 1852, whereby the defendants insured the plaintiff $750 upon his dwelling-house, $350 on his barn, and $100 on his furniture, " subject to the provisions and conditions of the charter and by-laws of said corporation, and the lien upon the buildings above mentioned, and the land under and belonging to the same," for six years, " in case of loss by fire, payable to Susan Latham, mortgagee, to amount of $400." The by-laws of the company were printed on the back of the policy, includ- ing the following :

" ART. 14. If insurance on any property shall be and subsist in said company, and in any other office, and from and by any other person or persons at the same time, the insurance made in and by said company shall be deemed and become void, unless such double insurance subsist with the consent of the president and secretary, signified by indorsement on the back of the policy and signed by them."

" ART. 18. If the premises be incumbered, the policy shall be

void, unless the true title of the assured and the incumbrances on the premises be expressed in the proposal or application for insurance."

The application, which was expressly "made a part of this policy, reference thereto being had for description," contained the following question and answer: " Whether incumbered or not, and what amount. See By-laws, art. 18." *Answer.* " Incumbered. Yes. To Susan Latham, mortgagee, $400."

At the trial before *Metcalf*, J., three grounds of defence were relied on, namely, 1st, a previous valid insurance on said barn; 2d, an incumbrance on the barn, growing out of a prior insurance thereof, material to the risk; 3d, that this action could not be maintained by the plaintiff in his own name. The judge overruled the third objection, and the following proceedings took place with regard to the two first:

It appeared that the Citizens' Mutual Fire Insurance Company at Brighton on the 18th of October 1850, in consideration of a cash premium of $2.50 paid, and a deposit note for $25 given to them, issued a policy for three years upon the plaintiff's barn, subject to the lien upon the same and the land under it, and under the rules and regulations annexed to the policy, among which was this: " When a subsequent insurance shall be made by any other company, or by any person, on property insured in this office, it shall annul the policy, and the premium shall be forfeited to this company, unless such double insurance subsist with the consent of the president, indorsed upon this policy. Also, when the insured shall in any way increase the risk of the insurance, the policy shall become void."

The plaintiff contended that the prior policy upon his barn became void by reason of an increase of risk, before the execution of the policy sued on, by the erection of a building connecting the barn with his dwelling-house, which it was admitted that he did in December 1851 and January 1852; and he introduced evidence tending to show that such connection increased the risk of the insurance of the barn.

The defendants contended that the policy in suit was void, because the barn and the land under it were " incumbered "

5 *

within the meaning of the plaintiff's application to them, by the lien created thereon to secure the deposit note given by him to the Citizens Insurance Company, on receiving the prior policy.

The secretary of that company, being called as a witness for the defendants, testified that said policy and deposit note were never surrendered or cancelled; that his office never had any notice of the insurance at the defendants' office, nor any notice of the increase of risk, except from the defendants' secretary after the fire; that no demand was ever made on the Citizens Insurance Company to pay the loss; that no assessment was made by said company on their policies, after the date of their policy to the plaintiff, until the 18th of February 1853, when an assessment was laid, for losses which occurred between the 15th of February 1849 and the 15th of February 1853, of which $1.60 was assessed upon the plaintiff, but he was never called upon to pay it, because in April 1853, before notices had been sent out, their directors, upon receiving information of the facts above stated from the defendants' secretary, caused the following entry respecting the plaintiff to be made on the books of the Citizens Insurance Office: " Policy void, assessment remitted April 1853." The plaintiff admitted the truth of this testimony.

" The defendants did not ask to have the jury find whether said lien existed or not, nor claim that the jury would be warranted in finding that the lien for an assessment on the deposit note for $25, if it existed on July 9th 1852, would have induced the defendants to decline the risk or ask a higher premium for taking said risk; but asked the court to rule, as matter of law, that, upon the foregoing facts that were admitted, there was a subsisting insurance at the same time, or that the lien did exist, and that the mere fact of the existence of such lien, not communicated in the written application, annulled the policy on which this action is brought, by reason of the defendants' regulation respecting incumbrances.

" The court declined to instruct the jury as prayed for by the defendants, but thereupon ruled and instructed the jury that the only matter for them to pass upon was, whether there was an increase of the risk of the plaintiff's barn by the plaintiff's

joining said barn and his dwelling-house together prior to the month of February in the year 1852 ; and directed them, if they found that the risk was thereby increased, to return a verdict for the plaintiff, otherwise to return a verdict for the defendants."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*C. G. Davis,* for the defendants.

*E. Ames & B. W. Harris,* for the plaintiff.

SHAW, C. J.    The first ground of defence relied on was that at the time this policy was made there was another policy subsisting on the barn, which, by the fourteenth article of the defendants' by-laws, made this policy void.

The plaintiff's answer to this was, that, by a clause in the other policy, when the insured should in any way increase the risk of the insurance, that policy should become void.    And he offered proof, that prior to obtaining this policy, he had increased the risk under the prior policy, by erecting a building connecting his house and barn, which greatly increased the risk.    The court instructed the jury, that if the erection of the new building con-necting the plaintiff's house and barn increased the risk before the present policy was issued, the former insurance was at an end, and therefore the case was not within the by-law which rendered the policy void.    The court are of opinion that this direction was correct.

The second ground of defence was founded on the eighteenth article of the by-laws, and the ground taken was, that the lien on the plaintiff's estate for a possible assessment on his deposit note, given to the Brighton office, was an incumbrance which the plaintiff ought to have specified in his application to the defendants for the insurance now in question ; and the defendants prayed the court to instruct the jury, as matter of law, that because this incumbrance was not specified, the policy was void.

It will be a grave question, we think, whether a remote contingent liability or possibility of charge for a very minute assessment is an incumbrance, within the meaning of this provision in the contract of insurance.    Perhaps a different rule may apply in covenants against incumbrances, because founded on

a different reason; there a purchaser, having paid a full com-
pensation for the estate with all its benefits, has a right to
expect in his grant and covenants an absolute and indefeasible
title without further charge.    Such is the ground suggested by
the court in *Shearer* v. *Ranger*, 22 Pick. 447, in which it was
held, that an inchoate right of dower is an incumbrance, within
the meaning of a covenant against incumbrances.    It is, in
effect, a stipulation that if there be any charge upon the estate,
known or unknown, the vendor of the estate will pay the ex-
pense of removing it.    Should the same rule apply to this sub-
ject of representation with a view to insurance, every married
man making application for an insurance, in answer to the
question whether his estate is incumbered, must state that he
has a wife living, otherwise his policy would be void.    But this
is not the ground on which we decide.

If the plaintiff, by increasing the risk and thereby determining
his policy with the Brighton office, incurred any forfeiture, it
was of the premium paid, and not of the deposit note.    But
as the premium had been previously paid in cash, that caused
no lien on the estate. ·

It being rightly found then, upon the facts, that the plaintiff's
prior policy was at an end, his liability to assessment for others'
losses *prima facie* ceased with it; and if liable at all, he could
only be liable to a contribution for losses incurred by other
holders of policies, if any, whilst his own policy was in force,
and before its termination.    That, however, was peculiarly a
question of fact, to be left to the jury.    The evidence would
rather seem to imply that there was no such liability; because
the company, upon notice that the plaintiff's policy had been so
terminated, cancelled an assessment for a very small sum, which
had been previously made on the plaintiff's deposit note, in
ignorance of the fact that his policy was at an end.    This cer-
tainly is not conclusive; because the question is, whether any
such liability to assessment existed when the policy by the de-
fendants was made.    Still it was a question of fact, whether
such liability then existed.    And the defendants did not request
the court to submit that question of fact to the jury on the

Jackson *v.* Farmers' Mutual Fire Insurance Company.

evidence; they requested the court to rule, as matter of law that this was an incumbrance; and we think the court could not legally so direct. As the case comes before us on exceptions, we can consider only the exceptions as they were taken.

Upon the question, whether the action can be maintained by the present plaintiff, or should have been brought in the name of Mrs. Latham, it will be observed that the stipulation in the policy was not that the whole loss should be payable to Mrs. Latham in case of loss, but only $400 out of a policy for $1200. It turns out that, in the event which has happened, the loss, being of the barn only, is less than $400. But the question is, what was the legal effect of the contract when made? Suppose the loss had been $1200; would the plaintiff and Mrs. Latham each have had a right of action? Suppose the mortgage fully paid off; would Mrs. Latham have had any right of action, having ceased to be mortgagee? However these questions may be determined when they distinctly arise, we think that under such a contract as this, where the money, in whole or in part, is made payable to a mortgagee in case of loss, the original assured does not cease to be a party to the contract, and to have an interest in the insurance. He has an interest to have the money paid to his mortgagee, because it extinguishes his own debt *pro tanto*, and enures to his benefit as if paid to himself. We think therefore that, with the knowledge and assent of such mortgagee, the action may be brought and maintained by the original assured; but with this difference: If such authority and assent were given before the commencement of the action, the plaintiff will be entitled to recover his costs; but if they were not given till after the suit was brought, the plaintiff will not be entitled to recover costs of the suit. As this is a fact for the court and not for the jury, it may be proved now by affidavit to be laid before the court, when judgment will be entered accordingly.

Evidence having been presented that it was brought with the assent of Mrs. Latham, and this known to the defendants before action brought,          *Judgment on the verdict, with costs.*